IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

  Plaintiff,

  v.                                                      No. CR 17-0965 JB

KIRBY CLEVELAND,

  Defendant.

**DEFENDANT KIRBY CLEVELAND'S MOTION
TO STRIKE THE NOTICE OF INTENT TO SEEK PENALTY OF DEATH
BECAUSE OF THE UNCONSTITUTIONALITY OF THE DISPARATE
APPLICATION OF THE DEATH PENALTY BY JUDICIAL CIRCUIT**

The Defendant, Kirby Cleveland, by and through his attorneys, Theresa M. Duncan and Donald F. Kochersberger III, and for his Motion to Strike the Notice of Intent to Seek Penalty of Death Because of the Unconstitutionality of The Disparate Application of The Death Penalty by Judicial Circuit, STATES:

**FACTUAL BACKGROUND**

On April 12, 2017, a federal grand jury charged Kirby Cleveland by indictment with murder of a federal officer, contrary to 18 U.S.C. §§ 1111 and 1114 (Count 1); felony murder, contrary to 18 U.S.C. § 1111 (Count 2); first-degree murder, contrary to 18 U.S.C. § 1111 (Count 3); escape, contrary to 18 U.S.C. § 751 (Count 4); three counts of using a firearm during and in relation to a crime of violence, contrary to 18 U.S.C. § 924(c)(1) (Counts 5-7); and felon in possession of a firearm, contrary to 18 U.S.C. § 922(g)(1) (Count

8). [Doc. 20.] All charges (except for escape) stem from the shooting death of Houston Largo, an officer employed by the Navajo Police Department (NPD), on March 11, 2017. Mr. Cleveland and Officer Largo are members of the Navajo Nation, and the shooting occurred on Navajo Nation land.

At the time of the shooting, Mr. Cleveland was serving a term of supervised release, which was imposed on August 29, 2016. *See* Doc. 121 (Judgment in a Criminal Case), *United States v. Cleveland*, 12-cr-02062-JB (filed Aug. 29, 2016). As a condition of his supervised release, Mr. Cleveland was required to reside at a residential re-entry program for a period of six months. *Id*. at 5. Pursuant to that condition, Mr. Cleveland began residing at the Diersen Residential Reentry Program on or about September 6, 2016 and was required to remain there until approximately March 6, 2017. The government alleges that on February 26, 2017 (a little over a week before the six-month period ended), Mr. Cleveland failed to return to Diersen following an approved pass. *See* Second Petition for Revocation of Supervised Release [Doc. 122], *United States v. Cleveland*, 12-cr-2062-JB (filed Feb. 27, 2017). Mr. Cleveland was arrested on March 12, 2017, near his home in Prewitt, New Mexico and charged, *inter alia*, with escape, contrary to 18 U.S.C. § 751.

On January 26, 2018, the United States filed a Notice of Intention to Seek the Death Penalty. [Doc. 39.] The Notice states that "the United States will seek a sentence of death for the following counts of the Indictment (Doc. 20): Count 2, charging Committing Felony Murder while in Violation of 18 U.S.C. § 751(a), in violation of 18 U.S.C. § 1111; and Count 6 charging Using and Carrying a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1) and (j)(1)." [Doc. 39.]

## ARGUMENT

**Counts 2 and 6 Rest on the Definition of "Escape"**

The felony underlying the Count 2 charge of felony-murder is Escape, and the alleged crime of violence underlying the Count 6 firearm charge is the felony-murder charged in Count 2, and therefore also relies on the Escape.  To be convicted of Count 2 or Count 6, the government will need to show that the alleged killing of Officer Largo by Mr. Cleveland occurred while Mr. Cleveland was "in the perpetration of, or attempt to perpetrate any … escape …".  18 U.S.C. § 1111.  Accordingly, each of these Counts rest of the definition of "Escape", as used in 18 U.S.C. 1111.  The Crime of Escape is defined by 18 U.S.C. § 751(a). That statute provides:

> "Whoever escapes from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court … shall, if the custody or confinement is by virtue of an arrest on a charge of felony … be fined not more than $ 5,000 or imprisoned not more than five years, or both…"

18 U.S.C. § 751(a).

The issue then is whether Mr. Cleveland was "in custody" as that term is used in § 751(a) at the time he left the Dierson Halfway House.  If he was not, then he could not be found guilty of Escape under that statute.  *See also United States v. Bailey*, 444 U.S. 394, 408, 62 L. Ed. 2d 575, 100 S. Ct. 624 (1980) (defining escape under § 751(a) as "absenting oneself from custody without permission").

The Ninth Circuit addressed this question in *United States v. Baxley*, 982 F.2d 1265 (9th Cir. 1992), and determined that similar circumstances did not constitute Escape. In *Baxley,* the defendant was residing at a half-way house as part of his pre-trial confinement. *Id.* at 1269. Nonetheless, the court likened his conditions to those of someone on probation. *Id.* Mr. Baxley was required to reside at the half-way house, but he was free to leave there as long as he logged the time, purpose, and duration of his trips away from the Center, and reported to pretrial services. *Id.* He was also allowed to be employed, subject to travel limitations. *Id.*

Mr. Cleveland's situation was very similar to that of *Baxley*. He was serving a period of supervised release, which is at least as analogous to probation as being on pre-trial release, like Baxley. He was also allowed to leave Dierson and was required to report to his probation officer. In fact, he departed Dierson with permission and did not in any manner conceal his departure. He simply failed to return for his last week there, when he was required to do so. There is every reason to conclude that, under the definition of Escape employed in the Ninth Circuit, Mr. Cleveland did not escape from Dierson when he failed to return. Accordingly, under the *Baxley* definition of Escape, Mr. Cleveland could not be convicted of Counts 2 or 6.

In contrast to the conclusion of the Ninth Circuit in *Baxley*, other Circuits have decided otherwise and ruled that situations similar to those in *Baxley*, and here, constitute Escape under 18 U.S.C. 751. See, *United States v. Edelman*, 726 F.3d 305 (2nd Cir. 2013); *United States v. Rudinsky*, 439 F.2d 1074 (6th Cir. 1971); *United States v. Goad*, 788 F.3d 873 (8th Cir. 2015). Notably, this includes the Tenth Circuit, in *United States v. Sack*, 379

F.3d 1177 (10th Cir. 2004). Consequently, using the currently accepted definition of Escape applicable to the District of New Mexico, Mr. Cleveland would likely be subject to a charge of Escape. And, here in New Mexico, Mr. Cleveland could be subjected to the death penalty based on conduct for which he could not be convicted in the Ninth Circuit.

As discussed at length in the Defendant's motion related to 18 U.S.C. §3598 [Doc. 77], the alleged crime took place within the boundaries of the Navajo Nation and both the alleged victim and Mr. Cleveland are Navajo. The Navajo Nation extends into the states of Utah, Arizona and New Mexico, covering over 27,000 square miles and is larger than 10 of the 50 United States.[1] The Navajo Nation therefore spans two federal judicial districts, the Ninth Circuit which includes its Arizona portions, and the Tenth Circuit which covers Utah and New Mexico. The events charged in this case occurred in the portion of the Nation that is situated in McKinley County, New Mexico, the western edge of which borders Arizona. As a result, we are faced with an alleged crime within the sovereign Navajo Nation, but that portion that is seen by the United States to be situated in the western-most county of the District of New Mexico, and thus in the Tenth Circuit. However, had the alleged crime taken place just over the border of the western McKinley County line, it would have occurred in the Ninth Circuit.

The impact of this analysis is stunning: Mr. Cleveland faces the death penalty for Counts 2 and 6 in this case, but had these events occurred a few miles to the west, while still within the Navajo Nation, he could not be convicted of the crimes charged in Count 2

---

[1] http://www.navajo-nsn.gov/history.htm

and 6 as a matter of law. With respect to these two Counts of the Indictment, the arbitrary manner in which the United States places its Circuits controls whether he can be charged and killed, or not be charged at all. This is unfair on its face, and violates the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

**The Equal Protection Clause Prohibits Arbitrary Treatment of Different Classes**

The Equal Protection Clause of the Fourteenth Amendment prohibits denying "the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause is triggered when the government treats someone differently than another who is similarly situated. See *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir. 1991) (citing *City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)). The general rule is that legislation resulting in disparate treatment of different classes (unless they are suspect classes) is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440. While there are some classifications that would trigger a heightened analysis (race, gender, religion, etc.), the classification inherent in the different treatment by Circuit is subject only to this minimum standard. Nonetheless, there is no discernable rational legitimate interest being advanced by this scheme. It is simply based on the fact that there is a Circuit split regarding the definition of Escape. In this way, the classes are drawn based on nothing more than the happenstance of varied judicial decision-making.

Of course, the mere fact of this disparate treatment is not necessarily a violation of Equal Protection. Such a scheme can be upheld if it bears some rational relationship to a legitimate government interest. In this particular case, however, the fact is there is no conceivable relationship between the geography of a crime that takes place within the confines of the Navajo Nation and the application of something as serious as the federal death penalty. As such, this scheme, at least so far as it impacts whether the government may pursue the death penalty with respect to Mr. Cleveland, violates the Equal Protection Clause of the United States Constitution. Accordingly, the Court must strike the government's Notice seeking the death penalty with respect to Counts 2 and 6.

**The Due Process Clause Prohibits Sentences Based on Arbitrary Factors**

In *Furman v. Georgia*, 408 U.S. 238, 287 (1972), the Court invalidated the capital sentencing schemes of thirty-nine states and the federal Government because they afforded untrammeled discretion to judges and juries in determining whether or not to impose a death sentence. The primary concern arising out of such boundless discretion is that the imposition of death sentences was arbitrary and capricious, contrary to the Due Process Clause of the Fifth Amendment. "*Furman* mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *United States v. Gregg*, 428 U.S. at 189, 96 S. Ct. 2909.

There is scarcely anything as arbitrary and capricious as applying the death penalty in one portion of the Navajo Nation, as opposed to another. But, if the government were permitted to proceed with seeking the death penalty for Counts 2 and 6, this would indeed be the effect. Consequently, the Court must strike the government's Notice of Intent to Seek Penalty of Death with respect to Counts 2 and 6. To do otherwise would violate the Due Process Clause.

**The Eight Amendment Prohibits Arbitrarily Imposing the Death Sentence**

The Eight Amendment of the United States Constitution simply states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. 8. Despite this simple pronouncement, its application is wide. Of note for our purpose is the language "nor cruel and unusual punishments inflicted". *Id.* Whether some criminal punishment is "cruel and unusual" has been applied in numerous situations, and particularly the death penalty.

Among factors considered by members of Supreme Court in determining whether the death penalty constituted cruel and unusual punishment in violation of the Eight Amendment, was whether that punishment was being inflicted arbitrarily. *Furman v Georgia,* 408 U.S. 238 (1972). The Constitution forbids a capital-punishment scheme in which the sentence is being imposed arbitrarily and capriciously. In *Furman*, Justice Stewart concluded:

> These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual. For, of all the people convicted of…murders…many just as reprehensible as these, the petitioners are among a capriciously selected random handful upon whom the sentence of death has

> in fact been imposed….I simply conclude that the Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed.

*Furman*, 408 U.S. at 309-10 (Stewart, J., concurring) (citations and footnotes omitted).

As with Justice Stewart's concern about the happenstance of being struck by lightning, Mr. Cleveland is faced with being struck not by arbitrary and capricious nature of lightning, but that of geography and judicial district determinations. Whether one or the other is more arbitrary and capricious is likely a matter of close opinion, but it suffices to conclude that both fall well within the heartland of the meaning of that phrase. To allow the government to apply the death penalty to Mr. Cleveland based on the fact that the crime occurred in one location within the Navajo Nation, as opposed to another location several miles west, would be the definition of arbitrary and capricious. As such, not only does it violate the Fifth and Fourteenth amendments, it also would violate the Eighth Amendment, as it would constitute cruel and unusual punishment. Accordingly, the Court must strike the government's Notice seeking the death penalty with respect to Counts 2 and 6.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court hold that, due the disparate definition of the crime of escape by Circuit, the application of the death penalty to Mr. Cleveland would violate the Fifth, Eight and Fourteenth Amendments to the Constitution and strike the notice of death filed by the government. [Doc. 39].

Respectfully Submitted:

*/s/ Donald F. Kochersberger III*
_____
Donald F. Kochersberger III
BUSINESS LAW SOUTHWEST LLC
320 Gold Ave. SW, Suite 610
Albuquerque, New Mexico 87102-3299
(505) 848-8581 (Voice)
(505) 848-8593 (Facsimile)
Donald@BusinessLawSW.com (E-Mail)

-and-

Theresa M. Duncan
Duncan Earnest LLC
515 Granite Ave. NW
Albuquerque, New Mexico 87102-2144
(505) 842-5196 (Voice)
(505) 750-9780 (Facsimile)
Teri@DuncanEarnest.com (E-Mail)

*Attorneys for Defendant Kirby Cleveland*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of September, 2018, I filed the foregoing electronically through the CM/ECF system, which caused all counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

  Electronically Filed_____
 Donald F. Kochersberger III
 Attorney for Defendant Kirby Cleveland