# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                     No. CR 17-0965 JB

KIRBY CLEVELAND,

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Appear for All Hearings and to Assure Participation of Learned Counsel, filed February 26, 2018 (Doc. 52)("Motion"). The primary issues are: (i) whether, because Defendant, Kirby Cleveland, faces a capital prosecution, the Court should allow him to participate in all substantive hearings in the case; and (ii) whether the Court should extend all deadlines so counsel can participate in the defense, because Cleveland has a right to effective assistance of counsel in his capital case. The Court is reluctant to hold hearings outside Cleveland's presence, but the Court recognizes that circumstances may arise in which Cleveland cannot attend a hearing. Accordingly, the Court will grant Cleveland's first request in part and deny it in part. The second issue is now moot, because it is related to counsel's participation in recusal hearings and the Honorable Kenneth Gonzales, United States District Judge for the District of New Mexico, has now recused himself, and the case has been assigned to this Court.

**FACTUAL BACKGROUND**

The Court draws its facts about the offense at issue from the Indictment, filed April 12, 2017 (Doc. 20)("Indictment"). The Court recognizes that the Indictment largely represents Plaintiff United States of America's version of events and that Cleveland is presumed innocent.

Before becoming a United States District Judge, Judge Gonzales served as the United States Attorney for the District of New Mexico from 2010 to 2013. See "Kenneth John Gonzales," Wikipedia, https://en.wikipedia.org/wiki/Kenneth_John_Gonzales (last viewed September 22, 2018). During his tenure as the United States Attorney, Cleveland's first federal prosecution, United States v. Cleveland, No. CR 12-2062 MCA, was litigated in the District of New Mexico. See United States v. Cleveland, No. CR. 12-2062 MCA, Indictment at 1, filed August 21, 2012 (Doc. 46).

On July 18, 2013, Cleveland pled guilty to violations of 18 U.S.c. § 1153 and 18 U.S.c. § 113(a)(6), for an assault on Jane Doe resulting in serious bodily injury. See United States v. Cleveland, No. CR. 12-2062 MCA, Judgment at 1, filed November 27, 2013 (Doc. 102)("Judgment"). The Honorable M. Christina Armijo, then-Chief United States District Judge for the District of New Mexico, sentenced Cleveland to 24 months in prison and three years of supervised release. See Judgment at 1. Cleveland entered supervision on April 7, 2014, but after absconding from supervision, he was remanded to custody on July 14, 2016, for lying to the probation officer, violating the probation officer's instructions, using alcohol and other intoxicants, and not completing a substance abuse treatment program. See United States v. Cleveland, No. CR. 12-2062 MCA, Petition for Revocation of Supervised Release at 1, filed July 17, 2015 (Doc. 109); Judgment at 1-2, filed August 8, 2016 (Doc. 121); Second Petition for Revocation of Supervised Release at 1, filed February 27, 2017 (Doc. 122). Cleveland returned

to supervision on September 6, 2016, with the supervision set to end on September 5, 2018.  See United States v. Cleveland, No. CR. 12-2062 MCA, Second Petition for Revocation of Supervised Release at 1.  Before completing his supervised release, around February 26, 2017, to March 11, 2017, Cleveland escaped "from Diersen Residential Reentry Center in Albuquerque," New Mexico.  Indictment at 2.  Cleveland killed John Doe, Navajo Nation Division of Public Safety Patrol Officer, with a firearm around March 11, 2017.  See Indictment at 2.

## PROCEDURAL BACKGROUND

A federal Grand Jury indicted Cleveland in the current case on April 12, 2017.  See Indictment at 1.  Two attorneys represent Cleveland: Theresa M. Duncan, the learned counsel,[1] and Donald Kochersberger.  See Transcript of Hearing at 3:8-10 (taken January 24, 2017)(Court)("January Tr."); Matthew J. Dykman, District of New Mexico, CJA Information Manual at 8 (2017).  Originally, the case was assigned to Judge Armijo.  The case was reassigned to Judge Gonzales on January 11, 2018.  On January 24, 2018, Plaintiff United States of America informed Judge Gonzales that he served as the United States Attorney when the United States prosecuted Cleveland's first case.  See Clerk's Minutes at 1, filed January 26, 2018 (Doc. 36)("January Minutes").  On January 25, 2017, the parties -- without Cleveland -- held a

---

[1]Section 3005 of the United States Code provides: "Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, shall promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases."  18 U.S.C. § 3005.  Section 620.30 of the Criminal Justice Act Guidelines states: "Ordinarily, 'learned counsel' (see: 18 U.S.C. § 3005 . . .) should have distinguished prior experience in the trial, appeal, or post-conviction review of federal death penalty cases, or distinguished prior experience in state death penalty trials, appeals, or post-conviction review that, in combination with co-counsel, will assure high-quality representation."  Cleveland faces a capital prosecution, thus § 3005 entitles him to one counsel "learned in the law applicable to capital cases."  18 U.S.C. § 3005.  Duncan has prior experience with death penalty cases and will fill the statutory requirement for learned counsel.  Duncan Earnest, http://www.duncanearnest.com/theresa-m-duncan.html.

telephone conference with Judge Gonzales to discuss the matter.  See January Minutes at 1. Judge Gonzales referred the case to the Honorable Karen Molzen, then-Chief United States Magistrate Judge for the District of New Mexico, for findings of recusal.  See Order of Reference at 1, filed January 26, 2018 (Doc. 37); Proposed Findings and Recommended Disposition, filed January 26, 2018 (Doc. 38).  The parties agreed to another status conference, which Judge Gonzales scheduled for February 1, 2018.  See January Minutes at 3; Clerk's Minutes at 1, filed February 2, 2018 (Doc. 42)("February Minutes").  During the conference, Ms. Duncan raised the fact that she would start trial before this Court for the case against members of the Syndicato de Nuevo Mexico prison gang ("SNM") on the following Monday. See January Transcript at 8:22-25 (Ms. Duncan).   Judge Gonzales, nevertheless, asked Ms. Duncan and Mr. Kochersberger to file a motion in response to the recusal issue by the "close of business on Monday."  January Tr. at 9-11 (Court).  On January 26, 2018, the day after the telephone conversation, the United States filed its Notice of Intent to Seek the Death Penalty, filed January 26, 2018 (Doc. 39).

The parties held the scheduled status conference -- again without Cleveland present -- on February 1, 2018.  See February Minutes at 1-2.  Ms. Duncan did not participate, because she was in Las Cruces, New Mexico for the SNM case.  See Transcript of Status Conference at 3:15-16 (taken February 1, 2017)(Court)("February Tr."); Motion at 7; Transcript of Opening Statements at 7:5 (taken January 31, 2018)(Court); id. at 12:1-5 (Duncan).  In the conference, Judge Gonzales decided that then-Chief Magistrate Judge Molzen should further review the recusal issue, particularly in light of additional documents that the United States discovered.  See Order Resulting From Status Conference at 1-2, filed February 2, 2018 (Doc. 44)("Status Conference Order").  Judge Gonzales also asked the parties to propose a scheduling order for this

case by February 28, 2018, even though Ms. Duncan expected to remain in trial for the SNM case for four to eight weeks.  See January Tr. at 6:10-16; id., at 6-7; id., at 12-15.  The parties and Judge Gonzales set a status conference for March 2, 2018.  See Order Setting an In Person Status Conference, filed February 5, 2018 (Doc. 47).

Then-Chief Magistrate Judge Molzen determined that, while Judge Gonzales did not actively participate in the prosecution of Cleveland's first case, Judge Gonzales emailed the prosecutor to say, "Nice job, Nova!" after Cleveland's guilty plea.[2]  Second Report by the Magistrate Judge at 1-2, filed February 2, 2018 (Doc. 45)("Second PFRD").  Then-Chief Magistrate Judge Molzen concluded that "recusal does not appear mandatory," but the email "should be disclosed."  Second PFRD at 1.  Then-Chief Magistrate Judge Molzen did not make a further recommendation, "because the [28 U.S.c. § 455(b)(3)] 'appearance of impartiality' analysis requires consideration of all relevant information and would extend beyond the documents that [she] reviewed *in camera*," so "a further recommendation seems outside the scope of the order of referral."  Second PFRD at 2 (emphasis in original).

1.     **The Motion.**

Cleveland filed the Motion on February 26, 2018, before the Court received the case.  See Motion at 1.  Cleveland asks that: (i) he "be allowed to appear for all substantive hearings in the case"; and (ii) "the Court extend all existing and future deadlines to allow [Ms. Duncan] an opportunity to meaningfully participate in the defense of the case" after the SNM trial.  Motion at 1.  Cleveland argues that the Court should ensure a defendant's presence at all meetings at which the parties and the Court discuss "historical factual issues."  Motion at 1, 2 (citing Fed. R.

---

[2]"Nova" refers to Novaline Wilson, an Assistant United States Attorney who prosecuted Cleveland's first case and acts as an attorney for Plaintiff United States in this case.  See Second PFRD at 2.

Crim. P. 43(a)(2); 3A C. Wright, Federal Practice and Procedure § 721.1, at 12 (2d ed. 1983); Grayton v. Ercole, 691 F.3d 165, 172 (2d Cir. 2012)). Cleveland admits that the Federal Rules of Criminal Procedure leave an exception for "conference[s] or hearing[s] on . . . question[s] of law." Motion at 2 (citing Fed. R. Crim. P. 43(b)(3)). Cleveland contends, however, that his presence is particularly important given that he faces a capital prosecution. See Motion at 3-5.

Regarding Ms. Duncan's participation, Cleveland requests that the Court delay establishing deadlines and requiring filings until Ms. Duncan can participate. Motion at 9. Cleveland explains that his concerns arose, because Ms. Duncan's presence "was of no consequence" to Judge Gonzales at the February 1, 2018, hearing. Motion at 7. Despite Ms. Duncan's commitment to the SNM trial, the court deemed that she could participate in scheduling matters. See Motion at 7. Cleveland argues that "[t]he right to effective assistance of counsel is dependent on the very right to counsel itself." Motion at 7 (citing Wainwright v. Torna, 455 U.S. 586, 587-88 (1982)). According to Cleveland, "[b]y not permitting [Ms. Duncan] an opportunity to be present at every hearing in this case, and to meaningfully participate in every facet of this case, this Court would render the Sixth Amendment right to counsel meaningless." Motion at 8.

2.    **The Hearing.**

The case was reassigned to this Court on March 5, 2018. The Court held a status conference on March 21, 2018. See Transcript of Hearing at 2:23 (taken March 21, 2018)("Tr.").[3] The Court began by explaining that it would "prefer . . . [to] grant [Cleveland's] motion in large part," Tr. at 41:24-25 (Court), but had reservations, because "there might be a

_____

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

circumstance[] that would be unusual that you waived or didn't care about," Tr. at 42:1-2 (Court). The Court offered to "try to schedule things and make sure that [counsel is] available to participate and not try to have hearings without you present." Tr. at 42:3-5 (Court). Cleveland agreed with the Court and described the motion to assure participation of learned counsel as targeted at "the disqualification of Judge Gonzales and making sure [counsel] could participate." Tr. at 42:10-13 (Ms. Duncan). Regarding the motion to appear for all hearings, Cleveland's counsel admitted that she knew the Court's "practice is to have the defendants present for all hearings," but "didn't want to withdraw a request that [they felt was] important." Tr. at 42:14-20 (Ms. Duncan). The Court indicated that it would grant the motion to appear for all hearings, with a "caveat in case there is an emergency and we . . . deal with it at that time," because "over a two-year period it's hard to anticipate everything that would come up." Tr. at 42:25-43:3 (Court).

## RELEVANT LAW REGARDING THE FIFTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA AND DUE PROCESS

The Fifth Amendment provides:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.

The United States Court of Appeals for the Tenth Circuit has held that "[t]he constitutional right of the defendant to be present at trial is rooted in both the Confrontation Clause and the Due Process Clause." United States v. Beierle, 810 F.3d 1193, 1198 (10th Cir.

2016)(citing United States v. Gagnon, 470 U.S. 522, 526 (1985)(per curiam)). "The Confrontation Clause assures the defendant of 'the privilege to confront one's accusers and cross-examine them face to face.'" United States v. Beierle, 810 F.3d at 1198 (quoting Snyder v. Massachusetts, 291 U.S. 97, 106 (1934), overruled in part on other grounds by Malloy v. Hogan, 378 U.S. 1 (1964)). Beyond actual presentation of evidence at trial, presence at court proceedings implicates the Due Process Clause and not the Confrontation Clause. See United States v. Beierle, 810 F.3d at 1198. Pursuant to the Due Process Clause, then, "'the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" United States v. Beierle, 810 F.3d at 1198 (original alterations omitted)(quoting United States v. Gagnon, 470 U.S. at 526). "[T]he exclusion of a defendant . . . from the courtroom during argument on a question of law does not violate defendant's constitutional right to be present at every step of the proceedings." United States v. Beierle, 810 F.3d at 1199 (citing Deschenes v. United States, 224 F.2d 688, 693 (10th Cir. 1955)). Given the importance of the defendant's presence, rule 43 of the Federal Rules of Criminal Procedure codifies this due process principle. See United States v. DeLeon, No. CR 15-4268 JB, 2017 WL 2272936, at *18 (D.N.M. Feb. 6, 2017)(Browning, J.).

## LAW REGARDING THE CONFRONTATION CLAUSE

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Tenth Circuit "has determined the Confrontation Clause does not apply at noncapital sentencing proceedings under the Guidelines." United States v. Phillips, 165 F. App'x 677, 681 (10th Cir. 2006)(cited in United States v. Mata, No. CR 05-2046 JB, 2006 WL 4079127, at *10 (D.N.M. May 2, 2006)(Browning, J.)). In Crawford v. Washington, 541

U.S. 36 (2004), the Supreme Court of the United States of America held that, consistent with the

Sixth Amendment, "[t]estimonial statements of witnesses absent from trial [are admissible] only

where the declarant is unavailable, and only where the defendant has had a prior opportunity to

cross-examine." <u>Davis v. Washington</u>, 541 U.S. 36, 59 (2004). In <u>Davis v. Washington</u>, 547

U.S. 813 (2006), the Supreme Court further elaborated on what a "testimonial" statement is:

> Statements are nontestimonial when made in the course of police interrogation
> under circumstances objectively indicating that the primary purpose of the
> interrogation is to enable police assistance to meet an ongoing emergency. They
> are testimonial when the circumstances objectively indicate that there is no such
> ongoing emergency, and that the primary purpose of the interrogation is to
> establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822. The Tenth Circuit has restated this rule, defining a testimonial statement as "a

'formal declaration made by the declarant that, when objectively considered, indicates' that the

'primary purpose of the [statement is] to establish or prove past events potentially relevant to

later criminal prosecution.'" <u>United States v. Morgan</u>, Nos. 12-1408, 12-1442, 13-1032, 2014

WL 1378207, at *9 (10th Cir. 2014)(alteration in original)(quoting <u>United States v. Smalls</u>, 605

F.3d 765, 777-78 (10th Cir. 2010)). <u>Accord</u> <u>United States v. Chaco</u>, 801 F. Supp. 2d 1200, 1207-

10 (D.N.M. 2011)(Browning, J.)(discussing developments in Tenth Circuit precedent on the test

regarding what qualifies as a testimonial statement).[4]

---

[4]In <u>United States v. Chaco</u>, the Court explained:

> The Tenth Circuit has stated that a critical element in determining whether
> a statement is testimonial or non-testimonial "centers on the reasonable
> expectations of the declarant." <u>United States v. Summers</u>, 414 F.3d 1287, 1302
> (10th Cir. 2005). The Tenth Circuit has held that "a statement is testimonial if a
> reasonable person in the position of the declarant would objectively foresee that
> his statement might be used in the investigation or prosecution of a crime."
> <u>United States v. Townley</u>, 472 F.3d 1267, 1272 (10th Cir. 2007)(quoting <u>United
> States v. Summers</u>, 414 F.3d at 1302). Other Circuit Courts of Appeal are in
> accord. <u>See</u> <u>United States v. Townley</u>, 472 F.3d at 1272 (citing <u>United States v.

In Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), the Supreme Court addressed

whether the admission of an affidavit by a forensic chemist, who swore that the substance which

the police seized from the defendant was cocaine of a certain amount, violated the Confrontation

Clause.   See 557 U.S. at 307.   The Supreme Court first concluded that such affidavits were

testimonial, because they were "made under circumstances which would lead an objective

---

Hinton, 423 F.3d 355, 360 (3d Cir. 2005); United States v. Cromer, 389 F.3d 662,
675 (6th Cir. 2004); United States v. Saget, 377 F.3d 223, 229 (2d Cir. 2004)).
The Tenth Circuit in United States v. Smalls called into question some aspects of
the definition of testimonial that it set down in United States v. Summers.  See
United States v. Smalls, 605 F.3d at 777 ("Upon close inspection, Summers'
definition of 'testimonial' appears somewhat in tension with Davis[ v.
Washington, 547 U.S. 813 (2006)]' strictures, and perhaps overly broad . . . .").
Specifically, the Tenth Circuit stated that a testimonial statement must be made in
a "formal" context, although they were not specific about what that might mean.
See United States v. Smalls, 605 F.3d at 777-78.   Next, the Tenth Circuit
specified that the United States v. Summers articulation ignored the statement's
"primary purpose," and focused instead on the foreseeability to the declarant of
the purposes to which the statement "might" be put.  United States v. Smalls, 605
F.3d at 777-78.   With those two clarifications, it declined to restate a precise
definition of a testimonial statement, instead setting forth two proposed
definitions, either one of which it might adopt if the issue were put directly before
it:

>   [W]e might today formulate a definition of a testimonial statement
>   which reads: a formal declaration made by the declarant that, when
>   objectively considered, indicates the primary purpose for which the
>   declaration was made was that of establishing or proving some fact
>   potentially relevant to a criminal prosecution.   Or, to better
>   conform to the current state of Tenth Circuit precedent, we might
>   say: A formal statement is testimonial if a reasonable person in the
>   position of the declarant would objectively foresee that the primary
>   purpose of the statement was for use in the investigation or
>   prosecution of a crime.

United States v. Smalls, 605 F.3d at 778 (proffering these potential tests, but
holding "we need not now . . . . tender a definitive definition of 'testimonial,'
because Cook's statement is nontestimonial regardless of which of the foregoing
definitions we apply").

United States v. Chaco, 801 F. Supp. 2d at 1209-10.

witness reasonably to believe that the statement would be available for use at a later trial," and because, under Massachusetts law, the affidavit's sole purpose was to provide prima facie evidence of the content of the substance seized. 557 U.S. at 310. The Supreme Court then used the affidavit introduced by the prosecution to outline its concerns regarding the lack of cross-examination when such affidavits are introduced as evidence:

> The affidavits submitted by the analysts contained only the bare-bones statement that "[t]he substance was found to contain: Cocaine." At the time of trial, petitioner did not know what tests the analysts performed, whether those tests were routine, and whether interpreting their results required the exercise of judgment or the use of skills that the analysts may not have possessed. While we still do not know the precise tests used by the analysts, we are told that the laboratories use "methodology recommended by the Scientific Working Group for the Analysis of Seized Drugs." At least some of that methodology requires the exercise of judgment and presents a risk of error that might be explored on cross-examination.

557 U.S. at 320. Because there was no opportunity to cross-examine on these issues, the Supreme Court concluded that introduction of the affidavit violated the defendant's rights under the Confrontation Clause. See 557 U.S. at 329 ("The Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits, and the admission of such evidence against Melendez-Diaz was error.")(emphasis in original). The Supreme Court has since extended this holding to "forensic laboratory report[s] containing a testimonial certification -- made for the purpose of proving a particular fact -- through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." Bullcoming v. New Mexico, 564 U.S. 647, 661 (2011)("Accordingly, the analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess 'the scientific acumen of Mme. Curie and the veracity of Mother Teresa.'" (quoting Melendez-Diaz, 557 U.S. at 310 n.6)). See United States v. Harry, No. CR 10–1915 JB,

2014 WL 1950409 at *13 (D.N.M. 2014)(Browning, J.)(discussing the Confrontation Clause, but finding no violation where statement was not testimonial).

Except in rare cases, the prosecution's use of live or recorded video testimony without the defendant having the ability to confront the witness face-to-face violates a defendant's Confrontation Clause rights -- absent a showing of unavailability and prior opportunity to confront the witness. See United States v. Sandoval, No. CR 04–2362 JB, 2006 WL 1228953, at *7-9 (D.N.M. 2006)(Browning, J.). In Maryland v. Craig, 497 U.S. 836 (1990) -- which the Supreme Court decided before Crawford v. Washington -- the Supreme Court rejected a Confrontation Clause challenge to a Maryland statute that allowed a child witness in a child molestation case, under certain circumstances, to testify via a one-way closed circuit television, which did not allow the witness to view the defendant. See Maryland v. Craig, 497 U.S. at 860. While upholding the constitutionality of a child's testimony outside the defendant's presence, the Supreme Court in Maryland v. Craig recognized that the "central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." 497 U.S. at 845.[5]

The Supreme Court in Maryland v. Craig recognizes that the context of an adversary proceeding before the trier of fact involves "[t]he combined effect of these elements of confrontation -- physical presence, oath, cross-examination, and observation of demeanor by the trier of fact" that "is the norm of Anglo-American criminal proceedings." 497 U.S. at 846. The

---

[5]The Supreme Court has since distanced itself from this holding that the purpose of the Confrontation Clause is to ensure the reliability of evidence. See Bullcoming v. New Mexico, 564 U.S. at 652; Crawford v. Washington, 541 U.S. at 61.

Supreme Court in Maryland v. Craig also acknowledges the peculiar power of face-to-face confrontation in that "face-to-face confrontation enhances the accuracy of fact finding by reducing the risk that a witness will wrongfully implicate an innocent person," 497 U.S. at 846 (citing Coy v. Iowa, 487 U.S. 1012, 1019-20 (1988)), and that "face-to-face confrontation forms 'the core of the values furthered by the Confrontation Clause,'" Maryland v. Craig, 497 U.S. at 847 (quoting California v. Green, 399 U.S. 149, 157 (1970)).

The Supreme Court explains in Maryland v. Craig that the Confrontation Clause "reflects a preference for face-to-face confrontation at trial," but that the preference "must occasionally give way to considerations of public policy and the necessities of the case." 497 U.S. at 849 (internal quotation marks omitted). The Supreme Court emphasizes that the preference for face-to-face confrontation is strong, and that a defendant's Sixth Amendment confrontation right "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." 497 U.S. at 850.

While the issue is decidedly less clear, a violation of a defendant's Confrontation Clause rights does not occur when the defendant calls by videoconference or telephonically one of his or her own witnesses who is aligned with him. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ."). Cf. United States v. Olguin, 643 F.3d 384, 392 (5th Cir. 2011)("The Sixth Amendment guarantees the right to confrontation against a party testifying against him, not against others."). The need for "adversariness" is not present when the witness is aligned with the defendant. Maryland v. Craig, 497 U.S. at 845. The Supreme Court spoke in Crawford v. Washington about the need for the defendant to have "an adequate opportunity to cross-

examine" a witness to satisfy the Confrontation Clause, a need which is not present when the witness is aligned with the defendant.  See 541 U.S. at 58.  The Federal Rules of Evidence, for example, generally do not permit a party to ask leading questions -- a key tool of cross examination -- of a witness aligned with the party calling the witness.  See Fed. R. Evid. 611(c).[6] A defendant also waives a Confrontation Clause challenge by calling his own witness by videoconference or telephonically.  See United States v. Lopez-Medina, 596 F.3d 716, 730-34 (10th Cir. 2010)("Prior to Crawford, we held there was 'no doubt' a defendant could waive his rights under the Confrontation Clause.  The parties do not argue Crawford changed this rule.").

In 1969, the Supreme Court recognized that a defendant may waive his Confrontation Clause rights and that defendants commonly do so when pleading guilty.  See Boykin v. Alabama, 395 U.S. 238, 270 (1969)("Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial . . . .  Third, is the right to confront one's accusers.").  The Tenth Circuit recognizes that, both before and after the Supreme Court's decision in Crawford v. Washington, a defendant may knowingly waive his Confrontation Clause rights at trial.  See United States v. Lopez-Medina, 596 F.3d at 730-34 (recognizing that Confrontation Clause rights may be waived at trial "at least where there is an explicit waiver").  Specifically, the Tenth Circuit states: "Prior to Crawford, we held there was 'no doubt' a defendant could waive his rights under the Confrontation Clause.  The parties do not argue Crawford changed this rule."  United States v. Lopez-Medina, 596 F.3d at 731 (citations omitted).  The Tenth Circuit has held in prior cases that a defendant's counsel can stipulate to the

---

[6]Rule 611(c) of the Federal Rules of Evidence provides: "(c) **Leading Questions.** Leading questions should not be used on direct examination except as necessary to develop the witness' testimony.  Ordinarily, the court should allow leading questions: (1) on cross-examination; and (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."  Fed. R. Evid. 611(c).

admissibility of evidence that would otherwise violate the Confrontation Clause if doing so "was a matter of prudent trial strategy."  Hawkins v. Hannigan, 185 F.3d 1146, 1155 (10th Cir. 1999).  The United States Court of Appeals for the Sixth Circuit has recognized that such a waiver can be permissible in the context of the prosecution admitting a videotaped deposition of one of its witnesses.  See Earhart v. Konteh, 589 F.3d 337, 344 (6th Cir. 2009).  The Sixth Circuit in that case relied on one of its prior decisions where it had permitted such a waiver:

> The State relies upon our holding in Bailey v. Mitchell, 271 F.3d 652 (6th Cir. 2001), to argue that Earhart waived his right to contest the admission of the videotape deposition.  In Bailey, we held that a criminal defendant waived his right to confrontation by entering into a quid pro quo agreement with a state prosecutor.  Id. at 657.  The petitioner in Bailey had agreed to allow the State to admit the videotape deposition if the prosecutor would consent to the defendant's motion for a continuance.  Id.  Importantly, the Ohio state courts found as a factual matter that Bailey had made an explicit deal with the prosecutor for the admission of the videotape.  Id.

Earhart v. Konteh, 589 F.3d at 344.  Notably, the Tenth Circuit's case in United States v. Lopez-Medina involves an oral waiver on the record in open court.  See 596 F.3d at 731 ("It is clear from this statement [to the judge] that defense counsel intentionally relinquished his (or rather, his client's) confrontation right through his questioning of Johnson.").

In United States v. Sandoval, the Court considered the Confrontation Clause in the context of a minor victim and her alleged sexual attacker, as well as a statute permitting such testimony over closed-circuit television.  See United States v. Sandoval, 2006 WL 1228953, at *10-13.  The Court concluded that "[t]wo-Way closed-circuit television testimony" would be appropriate in that case "because the introduction of testimony in this manner" did not "violate[] the Confrontation Clause of the Sixth Amendment."  2006 WL 1228953, at *10.  Given the nature of the accusations and the unique circumstances in that case, the Court thereby allowed closed-circuit television testimony.  2006 WL 1228953, at *12.  The Court explained:

Jane Doe will suffer emotional trauma if forced to testify in open court, in the same courtroom, with the person who allegedly abused her, and will thus be unable to testify. Jane Doe will also be unable to testify because of her fear of her father -- Dr. Kern's opinion does not rest on Jane Doe's ability to testify in a court room setting generally, but is based upon the fear of her father. The Court had an opportunity to examine Dr. Kern's findings at a hearing before trial and to make specific findings to satisfy the factors set forth in Maryland v. Craig and § 3509. The Court will best protect Jane Doe's welfare if it allows her to testify by two-way closed circuit television, and Sandoval's Confrontation Clause rights will not be violated.

United States v. Sandoval, 2006 WL 1228953, at *12. See also United States v. DeLeon, 2017 WL 2272936, at *20-23 (allowing partitions between defendants when defendants could see the witness box and there was a risk that defendants would send coded messages between themselves).

## **RELEVANT LAW REGARDING RULE 43**

Rule 43 of the Federal Rules of Criminal Procedure provides:

**(a) When Required.** Unless this rule, Rule 5, or Rule 10 provides otherwise, the defendant must be present at:

**(1)** the initial appearance, the initial arraignment, and the plea;

**(2)** every trial stage, including jury impanelment and the return of the verdict; and

**(3)** sentencing.

**(b) When Not Required.** A defendant need not be present under any of the following circumstances:

**(1)** Organizational Defendant. The defendant is an organization represented by counsel who is present.

**(2)** Misdemeanor Offense. The offense is punishable by fine or by imprisonment for not more than one year, or both, and with the defendant's written consent, the court permits arraignment, plea, trial, and sentencing to occur by video teleconferencing or in the defendant's absence.

**(3)** Conference or Hearing on a Legal Question.  The proceeding involves only a conference or hearing on a question of law.

**(4)** Sentence Correction. The proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.c. § 3582(c).

**(c) Waiving Continued Presence.**

**(1) In General.**  A defendant who was initially present at trial, or who had pleaded guilty or nolo contendere, waives the right to be present under the following circumstances:

**(A)** when the defendant is voluntarily absent after the trial has begun, regardless of whether the court informed the defendant of an obligation to remain during trial;

**(B)** in a noncapital case, when the defendant is voluntarily absent during sentencing; or

**(C)** when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in conduct that justifies removal from the courtroom.

**(2) Waiver's Effect.**  If the defendant waives the right to be present, the trial may proceed to completion, including the verdict's return and sentencing, during the defendant's absence.

Fed. R. Crim. P. 43.  Predominant secondary authority explains that a defendant's necessary presence under rule 43 is discerned by distinguishing between a hearing at which there is legal argument only and one at which factual issues are presented:

Undoubtedly there are many motions that require only argument on a question of law.  Neither the Rule nor the Constitution requires the presence of defendant at the argument on such a motion.  If fact issues are presented, however, as they often will be on a pretrial motion to suppress evidence, it would seem that defendant has a right to be present although in some instances the absence can be regarded as harmless error.

3B Charles Alan Wright et al., Federal Practice & Procedure: Criminal § 722 (4th ed.)(2016)(internal footnotes omitted).  According to Wright & Miller, several courts have held that rule 43 does not require a defendant's presence when factual issues are present.  See 3B

Charles Alan Wright et al., supra § 722 n.4 (citing, among others, United States v. Burke, 345 F.3d 416, 422-24 & n.8 (6th Cir. 2003)). To that point, a criminal defendant's right to be present does not extend to "administrative conferences unrelated to any issues at trial." United States v. Oles, 994 F.2d 1519, 1525 (10th Cir. 1993). No good cause or extraordinary circumstances exception exists to rule 43. United States v. Jones, 410 F. Supp. 2d 1026, 1032 (D.N.M. 2005)(Browning, J.). The Court has stated,

> According to the advisory committee notes, "voluntarily absent" refers to a defendant who initially was present at trial, or who had pled not guilty and then absconded. The combination of the advisory committee notes and the construction of the rule itself, suggest that a signed written waiver, consenting to voluntary absence from sentencing, is insufficient to allow the Defendant to be absent from the sentencing.

United States v. Jones, 410 F. Supp. 2d 1026, 1032 (D.N.M. 2005)(Browning, J.). See United States v. Melo-Valencia, No. CR 04-2197 JB, 2010 WL 2977619, at *4 (D.N.M. June 28, 2010)(Browning, J.)(refusing to find a defendant voluntarily absent when he was a fugitive and the United States had not made an effort to locate the defendant and transport him over the United States-Mexico border).

## LAW REGARDING RIGHT TO COUNSEL

The Constitution requires that an indigent defendant be provided appointed counsel unless that right is intelligently and competently waived. See Gideon v. Wainwright, 372 U.S. 335, 342-43 (1963). Convictions gained in violation of Gideon v. Wainwright cannot be used "either to support guilt or enhance punishment for another offense." Burgett v. Texas, 389 U.S. 109, 115 (1967). Furthermore, the Supreme Court has extended these constitutional protections to misdemeanor cases where the court imposes any sentence of actual, probated, or suspended incarceration. See Alabama v. Shelton, 535 U.S. 654, 661-62 (2002); Argersinger v. Hamlin,

407 U.S. 25, 33-37 (1972)(holding that misdemeanor status is irrelevant if conviction leads to imprisonment even for a brief period). In <u>Scott v. Illinois</u>, 440 U.S. 367 (1979), the Supreme Court held that the Sixth and Fourteenth Amendments do not entitle an indigent defendant to trial counsel where he was convicted of theft and fined $50 after a bench trial. See <u>Scott v. Illinois</u>, 440 U.S. at 367, 368. The Supreme Court declined to extend <u>Argersinger v. Hamlin</u> to the defendant where the defendant is "charged with a statutory offense for which imprisonment upon conviction is authorized but not actually imposed upon the defendant." <u>Scott v. Illinois</u>, 440 U.S. at 369. The Supreme Court recognized:

> Even were the matter *res nova,* we believe that the central premise of <u>Argersinger</u> -- that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment -- is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel.

<u>Scott v. Illinois</u>, 440 U.S. at 373.

In <u>Nichols v. United States</u>, 511 U.S. 738 (1994), the Supreme Court held, "consistent with the Sixth and Fourteenth Amendments of the Constitution, that an uncounseled misdemeanor valid under <u>Scott v. Illinois</u> because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." <u>Nichols v. United States</u>, 511 U.S. at 748. Uncounseled misdemeanor convictions, in which the court imposes incarceration, are not counted. See <u>United States v. Cousins</u>, 455 F.3d 1116, 1126 (10th Cir. 2006)("Clarifying the scope of <u>Gideon</u>, the Court later held that an indigent defendant must be appointed counsel in any criminal prosecution, regardless of its classification as a misdemeanor or felony, 'that actually leads to imprisonment even for a brief period . . . .'" (quoting <u>Argersinger v. Hamlin</u>, 407 U.S. at 33)). See also <u>United States v. Jones</u>, No. CR 09-3078 JB, 2011 WL 5223032, at *3-5 (D.N.M. Oct. 6, 2011)(Browning, J.).

**RELEVANT LAW REGARDING THE RIGHT TO EFFECTIVE ASSISTANCE OF
COUNSEL**

The Supreme Court has long recognized that "the right to counsel is the right to effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that [it] cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. at 686. A defendant can pursue an ineffective assistance of counsel claim by asserting that the process was not adversarial because of affirmative state interference or a conflict of interest, or by arguing that his or her attorney was so inadequate that he or she was effectively denied the benefit of full adversarial testing. See Osborn v. Shillinger, 861 F.2d 612, 626 (10th Cir. 1988). See also Madrid v. United States, Nos. CIV 14-0801 JB/WPL, CR 12-0128 JB, 2016 WL 4492182, at *5 (D.N.M. June 30, 2016)(Browning, J.); United States v. Folse, Nos. CR 15-2485 JB, CR 15-3883 JB, 2016 WL 3996386, at *14 (D.N.M. June 15, 2016)(Browning, J.); Duran v. Att'y Gen. of N.M., No. CIV 11-0816 JB/GBW, 2013 WL 1681216, at *10 (D.N.M. March 29, 2013)(Browning, J.).

Regarding affirmative state intervention with counsel, the Supreme Court said in Strickland v. Washington: "Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." 466 U.S. at 686. A defendant may demonstrate such a violation by showing that a court limited counsel's choices at trial. See Geders v. United States, 425 U.S. 80, 88-89 (1976); Herring v. New York, 422 U.S. 853, 858-65 (1975); Brooks v. Tennessee, 406 U.S. 605, 612 (1972); Ferguson v. Georgia, 365 U.S. 570, 570-96 (1961). A court denied effective assistance of counsel when the court prohibited an attorney from consulting with a

client during an overnight recess.  See Geders v. United States, 425 U.S. at 88-89.  Courts also interfere with parties' rights to effective counsel when they prohibit a closing argument at a bench trial, see Herring v. New York, 422 U.S. at 858-65, require a defendant to testify first, see Brooks v. Tennessee, 406 U.S. at 612, and disallow direct examination of a defendant, see Ferguson v. Georgia, 365 U.S. at 570-96.

With regard to ineffective assistance arising from a conflict of interest, in Osborn v. Shillinger, the Tenth Circuit has stated:

> The most common means by which an attorney may fail to function as his client's advocate in the absence of affirmative state interference involves a conflict of interest arising from multiple or dual representation.  An attorney may, however, abandon his "duty to loyalty" to his client through other sorts of conflicts as well.  Whether the attorney is influenced by loyalties to other defendants, third parties, or the government, if he entirely fails to subject the prosecution . . . to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights.

Osborn v. Shillinger, 861 F.2d at 625 (internal citations and quotations omitted).  A defendant who demonstrates that a conflict of interest affected his representation's adequacy does not need to show prejudice to obtain relief.  See Osborn v. Shillinger, 861 F.2d at 625 (citing Cuyler v. Sullivan, 446 U.S. 335, 349-50 (1980)).  In such situations, prejudice will be presumed.  See Osborn v. Shillinger, 861 F.2d at 625.  The defendant must, however, "demonstrate[] that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance."  Strickland v. Washington, 466 U.S. at 692.  "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."  Cuyler v. Sullivan, 446 U.S. at 350.

With respect to ineffective assistance arising from inadequate lawyering, Strickland v. Washington provides the applicable two-part test:

First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair [proceeding] . . . .

Strickland v. Washington, 466 U.S. at 687. See United States v. Kennedy, 225 F.3d 1187, 1197 (10th Cir. 2000). The appropriate standard for attorney performance is that of reasonably effective assistance -- the defendant must demonstrate that counsel's representation, considering all the circumstances, fell below an objective standard of reasonableness based on prevailing professional norMs. See Strickland v. Washington, 466 U.S. at 687-88. In evaluating an attorney's performance, the court must be highly deferential:

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

. . . .

. . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

. . . [C]hoices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what

> investigation decisions are reasonable depends critically on such information. For
> example, when the facts that support a certain potential line of defense are
> generally known to counsel because of what the defendant has said, the need for
> further investigation may be considerably diminished or eliminated altogether.
> And when a defendant has given counsel reason to believe that pursuing certain
> investigations would be fruitless or even harmful, counsel's failure to pursue
> those investigations may not later be challenged as unreasonable.

Strickland v. Washington, 466 U.S. at 689-91 (internal citations and quotation marks omitted).

See United States v. Kennedy, 225 F.3d at 1197 ("There is a strong presumption that counsel provided effective assistance, and a . . . defendant has the burden of proof to overcome that presumption.")(quoting United States v. Williams, 948 F. Supp. 956, 960 (D. Kan. 1996)(Crow, J.)).

A defendant asserting ineffective assistance because of deficiency in attorney performance must also affirmatively prove prejudice. See Strickland v. Washington, 466 U.S. at 693; United States v. Kennedy, 225 F.3d at 1197. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

The Sixth Amendment requires a remedy tailored to the injury suffered. See United States v. Rodgers, 751 F.2d 1074, 1078 (9th Cir. 1985)(citing United States v. Morrison, 449 U.S. 361, 364 (1981)). In most ineffective-assistance-of-counsel cases, suppression of the evidence, rather than dismissal of the indictment, is the appropriate remedy. See United States v. Rodgers, 751 F.2d at 1078 (citing United States v. Morrison, 449 U.S. at 365-66, 366 n.3). Dismissal is warranted, however, where there is continuing prejudice from a constitutional violation that suppression of the evidence cannot remedy. See United States v. Rodgers, 751

F.2d at 1078 (citing <u>United States v. Morrison</u>, 449 U.S. at 365-66, 366 n.2). <u>See also</u> <u>United States v. DeLeon</u>, 2017 WL 2272936, at *15-17.

**ANALYSIS**

Cleveland asks that the Court ensure his presence at substantive hearings and that the Court avoid scheduling deadlines before Ms. Duncan, his learned counsel, can participate unimpeded by the SNM case, which Ms. Duncan had expected to last until "mid-to-late March." Motion at 7. The Motion appears to be primarily aimed at Judge Gonzales, who often has criminal hearings without the defendant's presence, and who Cleveland wanted recused. As Ms. Duncan knows from her experience in the SNM case, which had forty defendants and had serious security concerns, the Court goes to exhaustive lengths to have a defendant present for all hearings, regardless whether the hearings are primarily administrative or legal. The Court agrees with Cleveland as to Ms. Duncan's and his presence's importance. The Court, nevertheless, appreciates that unforeseen circumstances may arise in which it cannot secure either Cleveland's or Ms. Duncan's presence or participation. Further, the motion to assure participation of learned counsel is largely moot because it responded to scheduling deadlines and conferences related to Judge Gonzales' disqualification,. Judge Gonzales has recused himself; the case has been assigned to the Court; and the SNM trial has ended. The motion to appear for all hearings, however, remains at issue. The Court will grant Cleveland's requests in part and deny them in part, to reserve the ability to navigate emergencies or unusual situations.

The Court will avoid holding hearings without Cleveland. The Fifth Amendment guarantees Cleveland a right to be present at hearings, not solely focused on the law, where "a fair and just hearing would be thwarted by his absence." <u>United States v. Beierle</u>, 810 F.3d at 1198. <u>See</u> 810 F.3d at 1199. Rule 43 of the Federal Rules of Criminal Procedure likewise

provides Cleveland a right to "be present at . . . every trial stage," including substantive conferences and hearings, excepting those in which counsel and the Court only discuss the law or administrative matters not related to issues at trial.  United States v. Gonzalez, 596 F.3d 1228, 1243 (10th Cir. 2010).  See United States v. Oles, 994 F.2d at 1525.  The Court will, of course, respect those rights.  The Court will, however, go further.  The Court has often struggled to determine -- particularly in advance of a hearing -- whether the hearing will involve only administrative and/or legal issues.  Even when the issues to be decided may primarily be legal, the Court is always uneasy not having the defendant there when the facts are being discussed. The Court also has the same concerns about and experience with administrative hearings.  When setting schedules, the Court and the parties set aside time that is needed, and will often drift into a discussion of the facts.  The Court has been to barely any purely legal and/or administrative hearings, and has concluded that the divide made in rule 43 is odd.  Hearings often go into areas that the Court and parties cannot fully predict.  The Court has concluded that it is best to have the defendant present so that the Court and parties can make best use of the time and have a robust hearing, dealing with all current issues.

Moreover, the Court, like Cleveland, believes the judicial system benefits when defendants can attend discussions between counsel and the Court.  In discussing defendants' presence at hearings, the Court has previously stated:

> Getting the decision "right," i.e. getting the law and facts correct and accurate, is obviously important, but getting it right is only one-half of a judge's task, particularly a trial judge's job.  The other half of dispensing justice is the appearance of justice -- did the Court listen to the litigant's arguments, wrestle with those arguments, and deal with them in an intellectually honest way. Americans are pretty good about accepting a judicial decision -- even an adverse one -- and cease obsessing over an issue, if they are convinced that an authority figure has dressed up, taken them seriously, listened patiently and politely, wrestled with the arguments, addressed them, and accurately stated the facts.

United States v. DeLeon, 2017 WL 2272936, at *27-28 (quoting A.M. ex rel. Youngers v. New Mexico Dept. of Health, 117 F. Supp. 3d 1220, 1253 n.14 (D.N.M. 2015)(Browning, J.). When a defendant is not present, the defendant cannot see the Court and the defendant's counsel at work. In other words, the defendant cannot see the process of justice done if the defendant is not present. Thus, the Court will try to cooperate with Cleveland to meet his requests as much as possible.

The Court, however, will agree to Cleveland's request with a caveat, because the Court cannot predict all scenarios throughout the prosecution's course. The Court anticipates that the case will proceed for two years. A trial is not expected until April 6, 2020. During that time, situations may challenge or make impossible transporting Cleveland to the Court. Emergencies may arise, or Cleveland may waive the right to be present at a hearing. Accordingly, the Court will try to observe Cleveland's requests with the understanding that circumstances may arise in which the Court cannot do so. The Court does not anticipate, however, such rare circumstances when the defendant cannot be present and will try to avoid that situation.

While the motion to assure participation of learned counsel is largely moot, because the lengthy SNM trial ended, the Court will also try hard to work with Ms. Duncan to set deadlines and conferences according to a schedule that allows her to participate. The Court understands Ms. Duncan's importance to Cleveland's case. For the same reasons that the Court hesitates to guarantee Cleveland transportation to all hearings, the Court states a caveat to granting in full Cleveland's motion to assure participation of learned counsel. Neither the Court nor Cleveland can anticipate all events in the case. Therefore, rather than provide a blanket assurance that the Court will enable Ms. Duncan participation in all, the Court will work very hard with Cleveland to meet his requests.

**IT IS ORDERED** that Defendant's Motion to Appear for All Hearings and to Assure Participation of Learned Counsel, filed February 26, 2018 (Doc. 52), is granted in part and denied in part. The Court will try to observe the requests for the Defendant's and his learned counsel's presence at all hearings, but cannot provide a complete assurance that it will be able to meet the requests throughout the case's course.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jennifer M. Rozzoni
Letitia Carroll Simms
Michael D. Murphy
Niki Tapia-Brito
Novaline Wilson
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Donald Kochersberger
Business Law Southwest, L.L.C.
Albuquerque, New Mexico

--and--

Theresa M. Duncan
Ms. Duncan Earnest L.L.C.
Albuquerque, New Mexico

      *Attorneys for the Defendant*